# Exhibit A

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA**

| | | |
|---|---|---|
| W.G. TOMKO, INC., | ) | Docket No.: GD-24-5065 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Type of Pleading: |
| v. | ) | |
| | ) | PLAINTIFF'S DECLARATORY |
| STARR INDEMNITY AND LIABILITY | ) | JUDGMENT COMPLAINT |
| COMPANY, | ) | |
| | ) | |
| *Defendant.* | ) | Submitted on behalf of Plaintiff, |

Submitted on behalf of Plaintiff,
W.G. Tomko, Incorporated

Counsel of Record for this Party:

Steven M. Toprani, Esquire
PA I.D. 93217

Michelle M. Seman, Esquire
PA I.D. 329914

W.G. Tomko, Inc.
2559 State Route 88
Finleyville, PA 15332
724-348-2000

Richard J. Cromer, Esquire
PA ID 79214
Leech Tishman Fuscaldo & Lampl, LLC
525 William Penn Place, 28th Floor
Pittsburgh, PA 15219

FILED

2024 MAY -3 AM 10: 28

DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

### IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | |
|---|---|
| W.G. TOMKO, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| STARR INDEMNITY AND LIABIITY | ) |
| COMPANY, | ) |
| | ) |
| *Defendant.* | ) |

## <u>NOTICE TO DEFEND</u>

YOU HAVE BEEN SUED IN COURT. If you wish to defend against the claims set forth in the following pages, you must take action within TWENTY (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**ACBA Lawyer Referral Service**
**400 Koppers Building - 436 Seventh Ave.**
**Pittsburgh, Pennsylvania 15219**
**412-261-5555**
**E-mail: LRS@acba.org**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

W.G. TOMKO, INC.,                         )
                                          )
              *Plaintiff,*                )
                                          )
v.                                        )
                                          )
STARR INDEMNITY AND LIABILITY             )
COMPANY,                                  )
              *Defendant.*                )

## PLAINTIFF'S COMPLAINT IN DECLARATORY JUDGMENT

AND NOW, comes the Plaintiff, W.G. Tomko, Inc., by and through its undersigned counsel, and submits this Plaintiff's Complaint in Declaratory Judgment, and in support thereof, avers as follows:

### PARTIES

1.    Plaintiff is W.G. Tomko, Inc., a mechanical construction company located in Finleyville, Washington County, Pennsylvania.    Tomko conducts and transacts business in Allegheny County, Pennsylvania.

2.    Defendant Starr Indemnity and Liability Company (Starr) is, upon information and belief, an entity organized under the laws of New York with a place of business at 399 Park Avenue, Eighth Floor, New Your, NY 10022.

### JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter and Defendant Starr pursuant to 42 Pa.C.S.A. §5301(a)(2)(iii).

4.    Venue is proper in this Court pursuant to Pa.R.C.P. No. 1006, because a transaction or occurrence took place in Allegheny County out of which the cause of action arose.

## FACTUAL BACKGROUND

5.    Tomko is an insured party with Starr, pursuant to an insurance agreement (the "Policy"), identified with policy number 1000585372181, renewal number 1000023930, for a policy period from October 21, 2018, to October 21, 2019. A true and correct copy of the Policy is attached as Attachment A.  The Policy provides excess insurance coverage in the amount of $10,000,000.00. As detailed below, Tomko initiated an umbrella claim for coverage with Starr at claim number GLSIL0704212.

6.    Tomko had primary coverage under a commercial general liability policy with Zurich Insurance, and accordingly initiated a claim for coverage with Zurich at claim number 9640477103.

7.    Tomko commenced litigation against Clearway Energy, Inc. ("Clearway") and Energy Center Pittsburgh ("ECP") in the Court of Common Pleas of Allegheny County, Pennsylvania, at docket D-22-009351.  Tomko seeks damages in the amount of $771,995.33 for repair work performed on a steam system owned by Clearway and ECP, resulting from subcontractor mechanical work performed on a project with Mascaro Construction Company, L.P. ("Mascaro").

8.    Thereafter, Clearway and ECP filed a joinder complaint against Mascaro seeking additional damages in the amount of $3,000,000.00 for Tomko's alleged defective work.  During pretrial proceedings, Clearway and ECP increased their demand to approximately $26,000,000.00, an amount well in excess of available coverages.

9.    Zurich, Tomko's primary general liability carrier, tendered its full policy coverage.

10.    Tomko then demanded that Starr tender its policy limits.  Starr responded by denying coverage.  See Denial Letter dated April 30, 2024 at Attachment B.

11.     Despite this, Starr continues to refuse to tender its policy limits.

**COUNT I - ACTION FOR DECLARATORY JUDGMENT (42 Pa.C.S. §§ 7531-7541)**

12.     The averments in paragraphs 1 through 11 above are incorporated by reference as if more fully set forth at length hereinafter.

13.     Under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, "[c]ourts of record, within their respective jurisdictions, shall have the power to declare rights, status, and other legal relations . . . ." 42 Pa.C.S. § 7532.

14.     The Declaratory Judgments Act is declared to be remedial, "[i]ts purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and is to be liberally construed and administered." 42 Pa.C.S. § 7541.

15.     Plaintiff seeks a declaration from this Court that coverage exists pursuant to the insurance agreement.

16.     Plaintiff seeks a declaration from this Court that Starr is required to tender its policy limits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter an order:

1.)     declaring that the excess insurance policy number 1000585372181 provides coverage for the losses contemplated in the litigation at docket GD-22-009351.

2.)     declaring that Starr shall tender full policy limits under policy number 1000585372181.

Damages sought are not less than the maximum amount for compulsory arbitration.

Respectfully submitted,

W.G. TOMKO, INC.

Steven M. Toprani
PA ID 93217
W.G. Tomko, Inc.
2559 State Route 88
Finleyville, PA 15332
724-348-2000

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Signature: _____

Name: Steven M. Toprani, Esq.

Attorney No.: 93217

VERIFICATION

I, Michelle Seman, Compliance Director, on behalf of Plaintiff, hereby verify that the statements contained in the foregoing Complaint for Declaratory Judgment are true and correct to the best of my knowledge, information and belief. I understand that this statement is made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsifications to authorities.

5-3-2024
Date

Michelle Seman

 **Starr Indemnity & Liability Company**

---

**Starr Indemnity & Liability Company Excess Commercial Construction Impairment
Liability Program
Claim Reporting Guidelines**

---

**Please Send All Excess Commercial Construction Impairment Loss Notices To:**

**York**
**PO Box 183188**
**Columbus, OH 43218**

**Claims E-mail:**   4647starrindemnity@yorkisg.com
**Claims Fax:**   (866) 695-3651
**After hours emergency call service:**
         (888) 467-9675

Our preferred method of reporting is by email but Loss Notices may be submitted via certified mail or faxed. If immediate attention is needed, e-mailing or faxing the Loss Notice and/or Claim or Litigation information is strongly recommended. If you have a claim related question and need to contact York by telephone, please do so at (888) 467-9675.

**Consult Your Policy For Loss Reporting Requirements**

Your policy states when to report a loss and details the information to be submitted with a First Notice of Loss. This is often found in the General Conditions section, although it may be changed by an endorsement. Additionally, the following information/documentation will always be helpful in assisting us with our evaluation.

- Citing Starr Indemnity & Liability Company policy, or claim number, in all correspondence.
- Providing a copy of any suit, demand for arbitration or mediation, a governmental agency notice, claim letter or any similar notice.
- Sending a copy of any internal reports related to the loss.
- Forwarding copies of status reports prepared by your defense counsel and/or your claim handler, if the case has been pending for a period of time.

Our claim's administrator will always acknowledge each First Notice of Loss, initiate contact to open lines of communication, and will request any additional information that may be needed. Our formal claims acknowledgment will identify the person responsible for handling your reported Claim, and their specific contact information.

If you have questions or would like to discuss a specific loss with one of our Claims Team members, please feel free to contact us. Thank you.



EXHIBIT

A

# EXCESS LIABILITY DECLARATIONS

## Starr Indemnity & Liability Company
### Dallas, Texas
Administrative Office: 399 Park Avenue 8th Floor New York, NY 10022

**POLICY NUMBER:** 1000585372181          **RENEWAL OF:** 1000023930

**PRODUCER NAME:** Alliant Insurance Services
**ADDRESS:** 1501 Reedsdale Street, Suite 403
Pittsburgh  PA  15233

**ITEM 1.**  **NAMED INSURED:** W. G. Tomko, Inc.
**ADDRESS:** 2559 State Route 88
Finleyville  PA  15332

**ITEM 2.**  **POLICY PERIOD:  FROM**          October 21, 2018          **TO**          October 21, 2019
12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED SHOWN ABOVE.

**ITEM 3.**  **COVERAGE:**  Commercial Excess Liability

**ITEM 4.**  **LIMITS OF INSURANCE:**
The Limits of Insurance, subject to all the terms of this Policy, are:
**A.**  $          10,000,000  Each Occurrence
**B.**  $          10,000,000  Other Aggregate(s), Where Applicable
**C.**  $          10,000,000  Products-Completed Operations Aggregate

**ITEM 5.**  **"UNDERLYING INSURANCE"**

**A.** **First Underlying Insurance Policy(ies)**

| **Insurer** | **Policy No.** | **Policy Period** |
| --- | --- | --- |
| See attached Schedule of Underlying Insurance | | |

**B.** **Additional Underlying Insurance Policy(ies)**

| **Insurer** | **Policy No.** | **Policy Period** |
| --- | --- | --- |
| See attached Schedule of Underlying Insurance | | |

XS 101 D (10/08)

Page 1 of 2

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**ITEM 6.**    **POLICY PREMIUM:**

| Advanced Premium | Minimum Premium | Minimum Earned Premium |
|---|---|---|
| $ 163,992 | $ 163,992 | $ 40,998 |

| Estimated Exposure | Rate Per | Audit Period |
|---|---|---|
| N/A | N/A | N/A |

**ITEM 7.**    **NOTICES**

In the event of an accident, occurrence, wrongful act, claim or suit, that is reasonably likely to involve this Policy, send all pertinent facts to:

**York**
PO Box 183188
Columbus  OH  43218
4869excessclaims@yorkrsg.com
Fax: (866) 695-3651
Phone : (888) 467-9675
**After hours emergency call service:**
(888) 467-9675

**ITEM 8.**    **ENDORSEMENTS ATTACHED:**

| Title | Form Number |
|---|---|
| | CLAIMS RPT (00/00) |
| Claim Reporting Guidelines | XS 101 D (10/08) |
| Excess Liability Declarations | IL P 001 01 04 |
| U.S. Treasury Department's Office Of Foreign Assets Control (OFAC) Advisory Notice To Policyholders | XS 102 (10/08) |
| Excess Liability Policy Schedule Of Underlying Insurance | XS 100 (10/08) |
| Excess Liability Policy Form | XS 301 PA (10/08) |
| Pennsylvania Changes - Cancellation and Nonrenewal | XS 329 PA (10/08) |
| Pennsylvania Notice | XS 341 (10/08) |
| Auto Coverage - Exclusion Of Terrorism | XS 236 (10/08) |
| Wrap-Up And Joint Venture Exclusion | XS 342 (01/15) |
| Cap On Losses From Certified Acts Of Terrorism | XS 343 (01/15) |
| Certified Acts Of Terrorism Coverage Excess Of Retained Amount With Cap On Losses | XS 344 (01/15) |
| Disclosure Pursuant To Terrorism Risk Insurance Act | XS 374 (06/11) |
| Issuance of Commercial Excess Liability Policy Prior to Receipt of Controlling Underlying Policy | |

The foregoing discloses all hazards insured hereunder known to exist at the inception date of this Policy, unless otherwise stated herein by endorsement on this Policy.

COUNTERSIGNED _____December 10, 2018_____    BY _____

DATE                                                                    AUTHORIZED REPRESENTATIVE

Page 2 of 2

XS 101 D (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004



**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Excess Liability Policy
## Schedule of Underlying Insurance

| Policy Number: | 1000585372181 | Effective Date: | October 21, 2018 |
|---|---|---|---|
| Named Insured: | W. G. Tomko, Inc. | Issuing Company: | **Starr Indemnity & Liability Company** |

The Declarations, Schedule(s), and all terms and conditions complete this insurance Policy.

| Type of Policy or Coverage and Insurer, Policy Number and Policy | Limits of Insurance |
|---|---|

**A.    First Underlying Insurance Policy(ies)**

Coverage:  General Liability
Carrier:  Zurich American Insurance Co.
Policy No.:  GLO-1074111-01
Policy Period:  10/21/2018 - 10/21/2018

$1,000,000  Each Occurrence Limit
$2,000,000  Other Aggregate Limit
$2,000,000  Products-Completed Operations Aggregate Limit

Coverage:  Automobile Liability
Carrier:  Zurich American Insurance Co.
Policy No.:  BAP-1074113-01
Policy Period:  10/21/2018 - 10/21/2019

$1,000,000  Combined Single Limit

Coverage:  Employers Liability
Carrier:  Zurich American Insurance Co.
Policy No.:  WC-1074112-01
Policy Period:  10/21/2018 - 10/21/2019

$1,000,000  Each Accident
$1,000,000  Disease - Each Employee Limit
$1,000,000  Disease - Policy Limit

**B.    Additional Underlying Insurance Policy(ies)**

Date of Issue:    December 10, 2018

Authorized Representative:

XS 102 (10/08)

Page 1 of 1

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Starr Indemnity & Liability Company
## Dallas, Texas
### Administrative Office: 399 Park Avenue 8th Floor New York, NY 10022

#### Excess Liability Policy

**Named Insured:**          W. G. Tomko, Inc.

**Policy Number:**          1000585372181

**Effective Date:**          October 21, 2018 at 12:01 A.M.

This Policy is a legal contract between the Named Insured and Starr Indemnity & Liability Company (herein referenced as "the Company"). The Company agrees to provide insurance to the Named Insured, in exchange for the payment of the required premium. Coverage is subject to the terms and conditions described in this Policy.

This Policy and the coverage provided by it become effective at 12:01 A.M. at the address of the Named Insured on the Policy Effective Date shown above. It continues in effect in accordance with the provisions set forth in this Policy.

This Policy is governed by the laws of the state where it was delivered.

Signed for the Company as of the Effective Date above:

_____                    _____
**Steve Blakey,  President**                          **Nehemiah E. Ginsburg, General Counsel**

XS 100 (10/08)                                                                            Page 1 of 10

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# TABLE OF CONTENTS

Title                                                                                    Page

SECTION I. COVERAGE.….....………………………………………………………...[3]

SECTION II. LIMITS OF  INSURANCE…………………………………………………...[3]

SECTION III. DEFINITIONS…………………………………………………………….[4]

SECTION IV. CONDITIONS……………………………………………………………..[5]

SECTION V. EXCLUSIONS…………………………………..………………...……… .[8]

XS 100 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

## EXCESS LIABILITY POLICY FORM

Various provisions in this Policy restrict coverage.  Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words you and your refer to the Named Insured as shown in **ITEM 1.** of the Declarations. The words we, us and our refer to the Company shown in the Declaration providing this insurance.

The word Insured means the Named Insured and any person or organization qualifying as an Insured in the First Underlying Insurance Policy(ies), but only to the extent to which such person(s) or organization(s) qualify as an Insured in the First Underlying Insurance Policy(ies) at the inception date of this Policy. Newly acquired or formed organizations must comply with **SECTION IV. CONDITIONS, D. Changes** in order to qualify for coverage.

Words and phrases that appear in quotation marks have special meaning. Refer to **SECTION III. DEFINITIONS**, or to the specific section, of this Policy where such words appear.

## SECTION I. COVERAGE

A.  We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in **ITEM 5.** of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in **ITEM 5.A.** of the Declarations.

B.  Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss".

C.  The amount we will pay for the "Ultimate Net Loss" is limited as described in **SECTION II. LIMITS OF INSURANCE.**

## SECTION II. LIMITS OF INSURANCE

A.  The Limits of Insurance shown in the Declarations and the rules below describe the most we will pay regardless of the number of:

1.  Insureds;
2.  Claims made or suits brought; or
3.  Persons or organizations making claims or bringing suits.

B.  The Limits of Insurance of this Policy will apply as follows:

1.  This Policy applies only in excess of the "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations.

2.  If our Limits of Insurance stated in **ITEM 4.** of the Declarations are less than the total Limits of Insurance stated in **ITEM 4.** of the Declarations, then our Limits of Insurance shall be that proportion of the "Ultimate Net Loss" to which our Limits of Insurance apply to the total Limits of Insurance stated in **ITEM 4.** of the Declarations and apply only in excess of the total Limits of "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations.

XS 100 (10/08)

Page 3 of 10

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

3. Subject to Paragraph **B.2.** above, the Each Occurrence limit stated in **ITEM 4.A.** of the Declarations is the most we will pay for the "Ultimate Net Loss" for loss or damages arising out of any one occurrence to which this insurance applies.

4. Subject to Paragraphs **B.2.** and **B.3.** above, the limit stated in **Item 4.C.** of the Declarations for the Products-Completed Operations Aggregate is the most we will pay for all "Ultimate Net Loss" under the products-completed operations hazard.

5. Subject to Paragraphs **B.2.** and **B.3.** above, the Other Aggregate Limit stated in Item **4.B.** of the Declarations is the most we will pay for all "Ultimate Net Loss" except "Ultimate Net Loss" covered under the products-completed operations hazard, that is subject to an aggregate limit provided by the First Underlying Insurance Policy(ies). The Other Aggregate Limit stated in **ITEM 4.B.** applies separately and in the same manner as the aggregate limits provided by the First Underlying Insurance Policy(ies).

6. Subject to Paragraphs **B.2., B.3., B.4.** and **B5.** above, if the total applicable Limits of Insurance of "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations are:

   a. Exhausted by payment of "Ultimate Net Loss" arising solely out of a claim first made, or occurrence(s) which first took place, during the Policy Period shown in the Declarations and would be covered under the provisions of this Policy, this insurance applies in excess of such exhausted limit(s); or

   b. Reduced or exhausted by payment of "Ultimate Net Loss" arising out of a claim which was not first made during the Policy Period shown in the Declarations, or occurrence(s) which took place before or after the Policy Period shown in the Declarations or would not be covered under the provisions of this Policy, this insurance applies as if such payments had not been made.

7. The Limits of Insurance shown in **ITEM 4.** of the Declarations apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the Policy Period shown in the Declarations, unless the Policy Period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the preceding period for purposes of determining the Limits of Insurance.

## SECTION III. DEFINITIONS

A.    "Ultimate Net Loss"

"Ultimate Net Loss" means the total sum, after reduction for all recoveries including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under **ITEM 5.** of the Declarations, actually paid or payable due to a claim or suit for which you or an Insured are liable either by a settlement to which we agreed or a final judgment.

The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance".

B.    "Underlying Insurance"

"Underlying Insurance" means the Policy(ies) and/or self-insured retention identified in **ITEM 5.** of the Declarations. "Underlying Insurance" shall include:

   1. The First Underlying Insurance Policy(ies) scheduled in **ITEM 5.A.** of the Declarations;

   2. Any Additional Underlying Insurance Policy(ies) scheduled in **ITEM 5.B.** of the Declarations; and

   3. Any renewal or replacement of such Policy(ies).

XS 100 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

## SECTION IV. CONDITIONS

**A.    Appeals**

If the Insured or underlying insurer elects not to appeal a judgment or award in excess of the limits of the "Underlying Insurance," we may do so at our expense. We will not be liable for any judgment or award that exceeds the Limits of Insurance stated in **ITEM 4**. of the Declarations.

**B.    Bankruptcy or Insolvency**

Your or an Insured's bankruptcy, insolvency or inability to pay will not relieve us from our obligations under this Policy.

In the event of bankruptcy, insolvency or refusal or inability to pay, of any underlying insurer or insurer providing other insurance, the insurance afforded by this Policy will not drop down or replace such "Underlying Insurance" or other insurance, but will apply as if all limits of any "Underlying Insurance" or other insurance are fully available and collectible.

**C.    Cancellation**

1.   You may cancel this Policy.  You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.   We may cancel this Policy.  If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than thirty (30) days advance written notice stating when the cancellation is to take effect.  Mailing that notice to you at your mailing address shown in **ITEM 1.** of the Declarations will be sufficient to prove notice.

3.   The Policy Period will end on the day and hour stated in the cancellation notice.

4.   If we cancel, earned premium will be calculated pro rata based on the time this Policy was in force.

5.   If you cancel, earned premium will be more than a pro rata of the Advanced Premium as shown on **ITEM 6.** of the Declarations; it will be based on the time this Policy was in force and increased by the applicable short rate cancellation table and procedure.

6.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you.  Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.   The first Named Insured in **ITEM 1.** of the Declarations shall act on behalf of all other Insured(s) with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this Policy.

8.   Any of these provisions that conflict with a law that controls the cancellation of the insurance in this Policy is changed by this statement to comply with that law.

**D.    Changes**

You must promptly notify us of any newly acquired or formed organizations, or coverage or limit changes made after the inception date of this Policy to the First Underlying Insurance Policy(ies) as scheduled in **ITEM 5.A.** of the Declarations.

Coverage under this Policy will apply to newly acquired or formed organizations only if we endorse the organization as an Insured onto this Policy. Any newly acquired or formed organizations endorsed onto this Policy may be subject to an additional premium and to a premium audit.

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**E.    Coverage Territory**

Any claim or suit for loss or damage occurring within the Coverage Territory must be brought within the United States of America.

Coverage Territory shall be deemed to be anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

Payments under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**F.    Defense**

We have no duty to defend any claim or suit and will not be obligated to assume charge of the investigation, settlement or defense of any claim, suit or proceeding instituted against you or any Insured for loss or damages to which this insurance may apply. We will have the right and opportunity to participate or associate in the investigation, settlement or defense of any claim, suit or proceeding against you or an Insured for loss or damage to which this insurance may apply. If we exercise such right, which is at our sole discretion, we will do so at our own expense.

**G.    Maintenance of "Underlying Insurance"**

You agree to maintain all "Underlying Insurance" in full force and effect during our Policy Period stated in **ITEM 2.** of the Declarations, except for the reduction of the aggregate limits of the "Underlying Insurance" due to payment of claim(s) or suit(s) for loss or damage to which this insurance may apply. If you fail to comply with this condition precedent, then the insurance provided by this Policy shall only apply as though such "Underlying Insurance" had been in full force and effect by you.

**H.    Notification of Accidents or Occurrences**

1.    You or an Insured must see to it that we are notified as soon as practicable of an accident, occurrence or wrongful act which is reasonably likely to result in a claim or suit to which this insurance may apply.

To the extent possible, notice will include:

a.    How, when and where the accident, occurrence or wrongful act took place;

b.    The names and addresses of any injured persons and witnesses;

c.    The nature and location of any loss, injury or damage arising out of the accident, occurrence or wrongful act.

2.    If a claim is made or a suit is brought against an Insured that is reasonably likely to involve this Policy, you or an Insured must notify us in writing as soon as practicable.

3.    You and an Insured must:

a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;.

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement or defense of the claim or suit; and

Page 6 of 10

XS 100 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

    **d.** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of loss or damage to which this insurance may also apply.

**4.** No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**I.**    **Other Insurance**

If other insurance applies to "Ultimate Net Loss" that is also covered by this Policy, this Policy will apply excess of, and will not contribute to, the other insurance. Nothing herein will be construed to make this Policy subject to the terms, conditions and limitations of such other insurance. However, other insurance does not include:

**1.** "Underlying Insurance";

**2.** Insurance that is specifically written as excess over this Policy; or

**3.** Insurance held by a person(s) or organization(s) qualifying as an additional insured in "Underlying Insurance", but only when the written contract or agreement between you and the additional insured requires a specific limit of insurance that is in excess of the Underlying Limits of Insurance. However, the Limits of Insurance afforded the additional insured in this paragraph shall be the lesser of the following:

    **a.** The minimum limits of insurance required in the contract or agreement between you and the additional insured; or

    **b.** The Limits of Insurance shown in the Declarations of this Policy.

Other insurance includes any type of self-insurance or other mechanism by which an Insured arranges for the funding of legal liabilities.

**J.**    **Premium**

The first Named Insured shown in **ITEM 1.** of the Declarations shall be responsible for payment of all premiums when due.

The Advanced Premium shown in **ITEM 6.** of the Declarations is a flat premium for this Policy Period, unless Estimated Exposure, Rate Per and Audit Period are completed on the Declarations. In that case a Premium Audit Endorsement will be attached to the Policy.

Earned Premium in a Policy Period shall be subject to the Minimum Premium and the Minimum Earned Premium as stated in the Declarations, if applicable.

**K.**    **Transfer of Rights of Recovery Against Others to Us**

If the Insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring suit or transfer those rights to us and help us enforce them. Reimbursement of recovery(ies), minus expenses incurred by us in the process of recovery, will be first made to any interest (including the Insured) who has paid any amounts in excess of the limits of this Policy; then next to us; and then finally to all other interests (including the Insured and the underlying insurer) with respect to the remaining amounts, if any.

                                                  

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

L.    **Unintentional Errors or Omissions**

Your failure to disclose all hazards existing as of the inception date of this Policy shall not prejudice you with respect to the coverage afforded by this Policy provided such failure or any omission is not intentional.

M.    **When "Ultimate Net Loss" is Payable**

Coverage under this Policy will not apply unless and until the Insured or the Insured's "Underlying Insurance" has paid or is obligated to pay the full amount of the limits of the "Underlying Insurance" scheduled in **ITEM 5.** of the Declarations. If other insurance applies, coverage under this Policy will not apply until the other insurance has paid or is obligated to pay the full amount of its limit of insurance.

When the "Ultimate Net Loss" is determined, we will pay on behalf of the Insured the amount of "Ultimate Net Loss" to which this insurance applies.

## SECTION V. EXCLUSIONS

This insurance shall not apply to:

A.    **Asbestos**

1.    "Ultimate Net Loss" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.    Any obligation of the Insured to indemnify any party because of damages arising out of such "Ultimate Net Loss" as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.    Any obligation to defend any suit or claim against the Insured seeking damages, if such suit or claim arises from "Ultimate Net Loss" as a result of the manufacture of, mining of, use of, sales of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

B.    **Auto Coverages**
"Ultimate Net Loss" arising out of or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

C.    **Nuclear**

"Ultimate Net Loss":

1.    a.    With respect to which the Insured is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

b.    Resulting from the "hazardous properties" of "Nuclear Material" and with respect to which **(1)** any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the Insured is, or had this Policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

Page 8 of 10

XS 100 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

2.  "Ultimate Net Loss"" resulting from the hazardous properties of "Nuclear Material", if:

  a.  The "Nuclear Material" **(1)** is at any "nuclear facility" owned by the Insured or operated by the Insured or on the Insured's behalf, or **(2)** has been discharged or dispensed therefrom;

  b.  The "Nuclear Material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

  c.  The "Ultimate Net Loss" arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "Nuclear Facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to property damage to such "Nuclear Facility" and any property thereat.

3.  As used in this exclusion:

  a.  "Hazardous Properties" includes radioactive, toxic or explosive properties;

  b.  **"**Nuclear Material" means "Source Material", "Special Nuclear Material" or "By-Product Material;"

  c.  "Source Material", "Special Nuclear Material" and "By-product Material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

  d.  "Spent Fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

  e.  "Waste" means any waste material **(1)** containing "By-Product Material" and **(2)** resulting from the operation by any person or organization of a "Nuclear Facility" included within the definition of "Nuclear Facility" below;

  f.  "Nuclear Facility" means:

    **(1)**  Any nuclear reactor;

    **(2)**  Any equipment or device designed or used for **(i)** separating the isotopes of uranium or plutonium, **(ii)** processing or utilizing "Spent Fuel", or **(iii)** handling, processing or packaging wastes;

    **(3)**  Any equipment or device used for the processing, fabricating, or alloying of "Special Nuclear Material" if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(4)**  Any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

  g.  "Nuclear Reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

  h.  "Ultimate Net Loss" includes all forms of radioactive contamination of property.

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**D.    Pollution**

    **1.**   "Ultimate Net Loss" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

    **2.**   Loss, cost or expense arising out of any:

        **a.**   Request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

        **b.**   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

    This exclusion does not apply if valid "Underlying Insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of the applicable limits of the Underlying Insurance. Coverage provided under this Policy will follow the terms, definitions, conditions, exclusions and limitations of the First Underlying Insurance Policy(ies).

**E.    Workers Compensation and Similar Laws**

    "Ultimate Net Loss" for any obligation of the Insured under any worker's compensation, disability benefits or unemployment compensation law or any similar law.

XS 100 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

## Pennsylvania Changes –
## Cancellation and Nonrenewal

**Policy Number:** 1000585372181

**Named Insured:** W. G. Tomko, Inc.

**Effective Date:** October 21, 2018 at 12:01 A.M.

**A.** **SECTION IV. CONDITIONS,** condition **C. Cancellation** is deleted and replaced with the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by writing or giving notice of cancellation.

2. Cancellation Of Policies In Effect For Less Than 60 Days

   We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. Cancellation Of Policies In Effect For 60 Days Or More

   If this Policy has been in effect for 60 days or more or if this Policy is a renewal of a Policy we issued, we may cancel this Policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the Policy Period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

Page 1 of 2

XS 301 PA (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

4.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5.  Notice of cancellation will state the effective date of cancellation. The Policy Period will end on that date.

6.  If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7.  If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B.  The following conditions are added to **SECTION IV. CONDITIONS** and supersede any provisions to the contrary:

**Nonrenewal**

If we decide not to renew this Policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the Policy.

**Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_Steve Blakey_
_____
**Steve Blakey, President**

_Nehemiah E. Ginsburg_
_____
**Nehemiah E. Ginsburg, General Counsel**

XS 301 PA (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Pennsylvania Notice

**Policy Number:** 1000585372181
**Named Insured:** W. G. Tomko, Inc.

**Effective Date:** October 21, 2018 at 12:01 A.M.

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_____
**Steve Blakey,  President**

_____
**Nehemiah E. Ginsburg, General Counsel**

Page 1 of 1

XS 329 PA (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Auto Coverage –
# Exclusion of Terrorism

**Policy Number:** 1000585372181          **Effective Date:** October 21, 2018 at 12:01 A.M.
**Named Insured:** W. G. Tomko, Inc.

Any endorsement addressing acts of terrorism (however defined) in any "Underlying Insurance" does not apply to this Policy.

**A.** The provisions of this endorsement:

  **1.** Apply only to loss or damage arising out of the ownership, maintenance or use of any auto that is a covered auto under this Policy; and

  **2.** Supersede the provisions of any other endorsement addressing terrorism attached to this Policy only with respect to injury or damage arising out of the ownership, maintenance or use of any auto that is a covered auto.

**B.** The following definition is added to **SECTION III. DEFINITIONS** and applies under this endorsement wherever the term terrorism is enclosed in quotation marks:

  **1.** "Terrorism" means activities against persons, organizations or property of any nature:

    **a.** That involve the following or preparation for the following:

      **(1)** Use or threat of force or violence; or

      **(2)** Commission or threat of a dangerous act; or

      **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

    **b.** When one or both of the following applies:

      **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

      **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

XS 341 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

**C.** The following exclusion is added to **SECTION V. EXCLUSIONS:**

**Exclusion of Terrorism**

This insurance shall not apply to loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Any loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such

injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

6. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    a. Physical injury that involves a substantial risk of death; or

    b. Protracted and obvious physical disfigurement; or

    c. Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraph **C.5.** or **C.6.** above are exceeded.

With respect to this exclusion, Paragraphs **C.5.** and **C.6.** above describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this exclusion will apply to that incident. When the exclusion applies to an incident of "terrorism", there is no coverage under this Policy.

In the event of any incident of "terrorism" that is not subject to this exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Policy.

XS 341 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_____
**Steve Blakey, President**

_____
**Nehemiah E. Ginsburg, General Counsel**

XS 341 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.



**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Wrap-Up and Joint Venture Exclusion

**Policy Number:** 1000585372181              **Effective Date:** October 21, 2018 at 12:01 A.M.
**Named Insured:** W. G. Tomko, Inc.

The following exclusion is added to **SECTION V.  EXCLUSIONS**:

This insurance shall not apply to "Ultimate Net Loss" arising out of:

1.  Any joint venture, co-venture, joint lease, joint operating agreement or partnership; and

2.  Either your ongoing operations or operations included within the products-completed operations hazard for any project insured under a consolidated (wrap-up) program, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

   a.  Provides coverage identical to that provided by this Policy;

   b.  Has limits adequate to cover all claims; or

   c.  Remains in effect.

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_____
**Steve Blakey,  President**

_____
**Nehemiah E. Ginsburg, General Counsel**

Page 1 of 1

XS 236 (10/08)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Cap on Losses From Certified Acts of Terrorism

**Policy Number:** 1000585372181         **Effective Date:** October 21, 2018 at 12:01 A.M.
**Named Insured:** W. G. Tomko, Inc.

This endorsement modifies insurance provided under the following:

EXCESS LIABILITY POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to  such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_____
**Steve Blakey,  President**

_____
**Nehemiah E. Ginsburg, General Counsel**

XS 342 (01/15)

Page 1 of 1

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Certified Acts of Terrorism Coverage
# Excess of Retained Amount With Cap on Losses

**Policy Number:** 1000585372181      **Effective Date:** October 21, 2018 at 12:01 A.M.

**Named Insured:** W. G. Tomko, Inc.

This endorsement modifies insurance provided under the following:

    EXCESS LIABILITY POLICY

SCHEDULE

| | |
|---|---|
| Certified Acts of Terrorism Retained Amount | $1,000,000 |

**A. Coverage provided by this Policy for "Ultimate Net Loss" arising out of a "certified act of terrorism" applies in excess of the Certified Acts of Terrorism Retained Amount described in paragraph B. below.**

**B. SECTION II. LIMITS OF INSURANCE is amended to include the following:**

The Certified Acts of Terrorism Retained Amount refers to the amount stated in the Schedule of this endorsement.  This amount may consist of a self-insured retention, "Underlying Insurance" or a combination thereof.

The Certified Acts of Terrorism Retained Amount applies:

**1. Only to "Ultimate Net Loss" arising out of a "certified act of terrorism" covered under this Policy; and**

**2. Separately to each "certified act of terrorism".**

    We will pay those sums covered under this Policy only after your Certified Acts of Terrorism Retained Amount has been exhausted by means of payments for judgments or settlements. Defense expenses shall not erode the Certified Acts of Terrorism Retained Amount.

**C. SECTION IV. CONDITIONS, is amended to include the following condition:**

**Cap on Losses From Certified Acts of Terrorism**

    If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. SECTION III. DEFINITIONS, is amended to include the following definition:**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

E. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_____
**Steve Blakey, President**

_____
**Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Disclosure Pursuant to Terrorism Risk Insurance Act

**Policy Number:** 1000585372181          **Effective Date:** October 21, 2018 at 12:01 A.M.

**Named Insured:** W. G. Tomko, Inc.

SCHEDULE

| SCHEDULE – PART I |
| --- |
| Terrorism Premium (Certified Acts)          $ 1,065 |
| This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s): |
| Additional information, if any, concerning the terrorism premium: |

| SCHEDULE – PART II | |
| --- | --- |
| **Federal share of terrorism losses    85 %** (Refer to Paragraph **B.** in this endorsement.) | **Year: 2015** |
| **Federal share of terrorism losses    84 %** (Refer to Paragraph **B.** in this endorsement.) | **Year: 2016** |
| **Federal share of terrorism losses    83 %** (Refer to Paragraph **B.** in this endorsement.) | **Year: 2017** |
| **Federal share of terrorism losses    82 %** (Refer to Paragraph **B.** in this endorsement.) | **Year: 2018** |
| **Federal share of terrorism losses    81 %** (Refer to Paragraph **B.** in this endorsement.) | **Year: 2019** |
| **Federal share of terrorism losses    80 %** (Refer to Paragraph **B.** in this endorsement.) | **Year: 2020** |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A.  Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the Policy Declarations.

B.  Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

the applicable insurer deductible. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year , the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C.** Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_Steve Blakey_
_____
**Steve Blakey, President**

_Nehemiah E. Ginsburg_
_____
**Nehemiah E. Ginsburg, General Counsel**

XS 344 (01/15)

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ISSUANCE OF COMMERCIAL EXCESS LIABILITY POLICY PRIOR TO RECEIPT OF CONTROLLING UNDERLYING POLICY

**Policy Number:** 1000585372181

**Effective Date:** October 21, 2018 at 12:01 A.M.

**Named Insured:** W. G. Tomko, Inc.

**EXCESS LIABILITY POLICY**

It is agreed that the following is added to Section I., Coverage, Paragraph A.:

This Policy has been issued on the basis that, except where inconsistent with or supplementary to the Controlling Underlying Policy(ies), it is following all terms and conditions of the Controlling Underlying Policy(ies), which policy should reflect bound coverage in accordance with the warranties, terms, conditions, exclusions and limitations as contained in the binder for the Controlling Underlying Policy(ies), dated 10/21/2018.

Following the issuance of the Controlling Underlying Policy(ies), a copy of such policy shall be forwarded to the Insurer for review and agreement by the Insurer. If, upon review, we conclude that there are any differences in coverage between the binder and the Controlling Underlying Policy(ies), such differences will not be binding upon us unless (1) the Insurer agrees in writing, and (2) the Insured agrees to any additional premium and/or amendment to the provisions of the Policy(ies) required by the Insurer related to such differences in coverage.

All other terms and conditions of this Policy remain unchanged.

Signed for the Company as of the Effective Date above:

_____
**Steve Blakey, President**

_____
**Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.



**STARR**
COMPANIES
GLOBAL INSURANCE & INVESTMENTS

1000 Wilshire Blvd., 22nd Floor
Los Angeles, California 90017
213-259-8284 (Phone)
213-905-8593 (Cell)
213-330-7081 (Fax)
sheryl.stepanenko@starrcompanies.com

April 30, 2024

**SENT VIA ELECTRONIC MAIL/CONFIRMATION OF RECEIPT REQUESTED and
CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Mr. Steve Toprani
WG Tomko, Inc.
2559 PA-88 #1
Finleyville, PA 15332
stoprani@wgtomko.com

## SUPPLEMENTAL RESERVATION OF RIGHTS

RE:     *W.G. Tomko, Inc. v. Energy Center Pittsburgh, LLC, et al. v. Mascaro Construction Co., LP v. CJL Engineering, Inc. v. Casper Colosimo & Son, Inc.*
       **Case No.** GD-22-9351, Court of Common Pleas, Allegheny County, PA

**Insured:**    W.G. Tomko, Inc.
**Claim No.:**   GLSIL0704212
**Policy No.:**   1000585372181

Dear Mr. Toprani:

Starr Indemnity & Liability Company ("Starr") provides this letter to WG Tomko, Inc. ("Tomko") in connection with the above-referenced lawsuit captioned *W.G. Tomko, Inc. v. Clearway Energy, Inc. and Energy Center Pittsburgh, LLC v. Mascaro Construction Co., L.P. v. CJL Engineering, Inc. v. Casper Colosimo & Son, Inc.,* which is currently pending before the Court of Common Pleas of Allegheny County, Pennsylvania, Case No. GD-22-9351 (the "Lawsuit"). This letter follows and supplements our letter to you dated March 13, 2024, which is incorporated herein in its entirety by reference. This letter also responds to your letter dated April 26, 2024, wherein you request that Starr "tender coverage at excess policy limits" under the applicable Starr excess policy issued to Tomko.



EXHIBIT
B

As you know, Tomko initiated the Lawsuit with a direct claim against Clearway Energy, Inc. ("CEI") and Energy Center Pittsburgh, LLC ("ECP") in 2022. After ECP asserted claims against Mascaro Construction, Co., L.P. ("Mascaro"), Mascaro asserted a counterclaim against Tomko, for which Tomko seeks coverage from Starr (the "Counterclaim"). Starr was first provided notice of the Lawsuit in February 2024 after notice was provided to Starr's third-party administrator, Sedgwick on February 2, 2024.

Starr issued an excess liability insurance policy to Tomko bearing policy number 1000585372181 with a policy period of October 21, 2018 to October 21, 2019 (the "2018 Starr Policy"). The 2018 Starr Policy is a follow-form excess policy excess to a general liability policy issued by Zurich American Insurance Company ("Zurich") bearing policy number GLO-1074111-01, with a policy period of October 21, 2018 to October 21, 2019 (the "2018 Zurich GL Policy"). Starr also issued an excess liability insurance policy to Tomko for the subsequent year, bearing policy number 1000585372191 with a policy period of October 21, 2019 to October 21, 2020 (the "2019 Starr Policy"). The 2019 Starr Policy is a follow-form excess policy excess to a general liability policy issued by Zurich bearing policy number GLO-1074111-02, with a policy period of October 21, 2019 to October 21, 2020 (the "2019 Zurich GL Policy").

Starr understands that Zurich is providing Tomko with a defense to the Counterclaim. Starr understands that Zurich initially provided a defense under the 2018 Zurich GL Policy, subject to a full and complete reservation of rights as communicated in a letter from Zurich to Tomko dated July 31, 2023. Starr recently learned that Zurich subsequently revised its position and is now providing a defense under the 2019 Zurich GL Policy subject to a full and complete reservation of rights, as communicated in a letter dated March 11, 2024.

Additionally, Starr was recently made aware of a letter that Zurich issued to Tomko dated April 24, 2024, wherein Zurich advised Tomko that it "is prepared to commit the One Million Dollar ($1,000,000) limit of the [2019 Zurich GL Policy] on behalf of Tomko and Mascaro[1] in the event a settlement can be reached in this matter." One million dollars represents the "each occurrence" limit of liability of the 2019 Zurich GL Policy. Starr is also in receipt of your April 26, 2024 letter, wherein you demand that Starr "tender coverage at excess policy limits." Starr is aware that Judge Michael A. Della Vecchia has scheduled a Conciliation Conference on May 2, 2024, and that the bench trial of the Lawsuit is scheduled to commence on May 6, 2024.

This letter supplements Starr's coverage position and reservation of rights, which was previously set forth in our March 13, 2024 letter. In particular, Starr advises that the 2019 Starr Policy, which is excess of and follows form to the 2019 Zurich GL Policy, appears to be the only Starr Policy that applies to the Lawsuit, for the reasons discussed in Zurich's March 11, 2024 letter. This is a change from our March 13, 2024 letter, which discussed the 2018 Starr Policy as the follow form excess policy above the 2018 Zurich GL Policy.

---

[1] Starr understands that Zurich is providing Mascaro with a defense as an additional insured under the 2019 Zurich GL Policy.

Starr has not received any information, documents, evidence, or evaluation of the Lawsuit from Tomko or its defense counsel demonstrating that the Lawsuit involves covered damages for which Tomko is liable in excess of the applicable underlying insurance such that it would implicate the limits of liability of the 2019 Starr Policy. Accordingly, in response to Tomko's April 26, 2024 letter, it is Starr's position that it has no obligation to tender coverage of its policy limits at this time. Furthermore, Starr takes this opportunity to again advise Tomko of potential coverage defenses and coverage issues about which it should be aware and to reserve all of its rights, remedies, and defenses under the 2019 Starr Policy and the applicable law in connection with the Lawsuit.

## SUMMARY OF THE FACTS

This matter involves the NRG Uptown Energy District Center project located in Pittsburgh, Pennsylvania. In the Lawsuit, it is alleged that NRG Energy Center Pittsburgh LLC contracted NRG Business Services LLC to engineer, procure, and construct a chilled water and steam supply plant and emergency backup power supply facility at its facility in Pittsburgh, Pennsylvania. NRG Business Services LLC then retained Mascaro Construction Company, L.P. ("Mascaro") under an Engineering, Procurement and Construction contract dated November 22, 2016 to complete the project (the "EPC Contract").

Mascaro retained Tomko as a subcontractor in a subcontract dated December 19, 2016 (the "Subcontract") to perform work on the steam and chilled water supply systems, including underground piping through several vaults, connecting the plant with UPMC Mercy Hospital. It is alleged that the EPC contract was transferred from NRG Business Services, LLC to Energy Center Pittsburgh, LLC ("ECP") in 2020.

Tomko's Complaint, which was filed on July 28, 2022, contains causes of action for Sole Liability to Tomko, contractual indemnity, breach of warranty, breach of contract and breach of the implied warranty of good workmanship. Tomko sought damages in excess of $771,995.33.

On November 14, 2022, ECP filed an Answer to Tomko's Complaint which included a Joinder Complaint to Join Mascaro to the Lawsuit. In the Joinder Complaint, ECP alleges the steam system was first energized in February 2018. ECP alleges that in June 2019, Mascaro's engineer of record, CJL Engineering ("CJL"), reviewed 3rd party reports and concluded that during initial energization, the steam system experienced high stress conditions in excess of those allowed by the applicable American Society of Mechanical Engineers Power Piping Code. It is further alleged that CJL explained that the high stress conditions can result in significant plastic deformation, which increases the axial forces at the steam system slip joints and vault anchors, which in turn cracks concrete at vaults, damages pipes and damages anchors.

ECP alleges that in 2020, it detected water leaking from pipes outside vault 9 into vault 9. In May and June 2020, Tomko shut down the steam system to replace an anchor between vaults 9 and 10. Following corrective work and re-energization of the steam system, ECP allegedly observed damage to the steam plant and vaults 2, 4, 6, 7 and 9. Damage allegedly included cracked concrete at the vaults, damaged pipes and anchors and damaged supports. ECF alleges

3

that in August 2020, the project engineer concluded that the damage was the result of system defects that existed since the initial energization in February 2018. ECP alleges that CJL reported concerns with the installation of the pipe and pipe supports in the vaults, including improperly sized anchor bolts in the base plates and the improper use of grout under the base plates.

ECP alleges that Tomko performed recommended changes in April and May 2021. It is alleged that upon re-energization, an expansion joint in vault 6 seized and did not expand the full predicted amount. ECP alleges the seizure compromised the ability to guarantee the safe and reliable steam service to UPMC Mercy Hospital. ECP further alleges that expansion joints in vaults 11 and 13 similarly seized and did not expand to the fully predicted amount.

ECP also alleges that the chilled water system leaked after installation and that a leak was detected in the chilled water system on December 15, 2020, requiring repairs in 2021. In May 2022, ECP allegedly discovered a leaking pipe coupling, allegedly resulting from visible misalignment of both the supply pipe at the leaking coupling and the return pipe at an adjacent coupling. ECP alleges that "the evidence of poor workmanship and improper installation in both the leaking coupling and the non-leaking coupling suggests that the poor workmanship and improper installation are systemic." ECP's alleged damages are in excess of $4,100,000.

On May 8, 2023, Mascaro filed a Counterclaim for Breach of Contractual Indemnity against Tomko, alleging that pursuant to the terms of the Subcontract, Tomko was required to defend and indemnify Mascaro against the allegations in the Lawsuit against Mascaro, but that Tomko has failed to do so. Mascaro also filed a complaint to join CJL as a defendant to the Lawsuit, as the engineering firm that Mascaro contracted with to provide design and engineering firm for the Project.

ECP recently provided a report and damages summary prepared by Ankura Consulting Group, LLC, identifying two alternative damages assessments in the amounts of $25,873,592 and $27,740,411. Starr has participated in two Conciliation Conferences before Judge Della Vecchia on March 14, 2024 and April 23, 2024, as well as a private mediation held April 9, 2024. Another Conciliation Conference is taking place on May 2, 2024.

In a letter dated April 26, 2024, you advised that "Tomko has received documents, and fact and expert testimony concerning liability for damages attributable to it by Clearway Energy/Energy Center Pittsburgh for property damage" and that the damages you expect to be claimed at trial are "in the range of $25mm-$28mm." You further acknowledge "mounting evidence of liability against Tomko" and that you "reasonably expect an adverse judgment by the Court" that "will likely exceed excess coverage limits." Your letter demands that Starr "tender coverage at excess policy limits" in connection with the Lawsuit.

## COVERAGE PROFILE

### The 2019 Starr Policy

The 2019 Starr Policy has a policy period of October 21, 2019 to October 21, 2020,[2] with limits of $10 million for each occurrence, in the aggregate, and in the Products-Completed Operations aggregate.

The 2019 Starr Policy's Schedule of Underlying Insurance identifies the 2019 Zurich GL Policy. The 2019 Zurich GL Policy has limits of insurance of $1 million per occurrence, $2 million in the aggregate, and $2 million in the Products-Completed Operations aggregate.  The 2019 Zurich GL Policy is identified as "Underlying Insurance" under the 2019 Starr Policy.

The 2019 Starr Policy's Excess Liability Policy Form provides, in relevant part:

### SECTION I. COVERAGE

A. We will pay on behalf of the Insured, the "Ultimate Net Loss" in excess of the "Underlying Insurance" as shown in ITEM 5. of the Declarations, that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies and that takes place in the Coverage Territory. Except for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy(ies) shown in ITEM 5.A. of the Declarations.

B. Regardless of any other warranties, terms, conditions, exclusions or limitations of this Policy, if any applicable Underlying Insurance Policy(ies) does not cover "Ultimate Net Loss" for reasons other than exhaustion of its limit of liability by payment of claims or suits, then this Policy will not cover such "Ultimate Net Loss".

C. The amount we will pay for the "Ultimate Net Loss" is limited as described in SECTION II. LIMITS OF INSURANCE.

The 2019 Starr Policy's Limits of Insurance section provides, in relevant part:

B. The Limits of Insurance of this Policy will apply as follows:

1. This Policy applies only in excess of the "Underlying Insurance" scheduled in ITEM 5. of the Declarations.

\*       \*       \*

---

[2] The 2019 Starr Policy was cancelled effective September 15, 2020.

The 2019 Starr Policy contains the following definition:

### SECTION III. DEFINITIONS

A. "Ultimate Net Loss"

"Ultimate Net Loss" means the total sum, after reduction for all recoveries including other valid and collectible insurance, excepting only the "Underlying Insurance" scheduled under ITEM 5. of the Declarations, actually paid or payable due to a claim or suit for which you or an Insured are liable either by a settlement to which we agreed or a final judgment.

The term "Ultimate Net Loss" shall also include defense costs when such defense costs are included within the limits of insurance of any applicable "Underlying Insurance".

The 2019 Starr Policy contains the following relevant Conditions:

### F. Defense

We have no duty to defend any claim or suit and will not be obligated to assume charge of the investigation, settlement or defense of any claim, suit or proceeding instituted against you or any Insured for loss or damages to which this insurance may apply. We will have the right and opportunity to participate or associate in the investigation, settlement or defense of any claim, suit or proceeding against you or an Insured for loss or damage to which this insurance may apply. If we exercise such right, which is at our sole discretion, we will do so at our own expense.

*    *    *

### H. Notification of Accidents or Occurrences

1. You or an Insured must see to it that we are notified as soon as practicable of an accident, occurrence or wrongful act which is reasonably likely to result in a claim or suit to which this insurance may apply.

   To the extent possible, notice will include:

   a. How, when and where the accident, occurrence or wrongful act took place;
   b. The names and addresses of any injured persons and witnesses;
   c. The nature and location of any loss, injury or damage arising out of the accident, occurrence or wrongful act.

6

2. If a claim is made or a suit is brought against an Insured that is reasonably likely to involve this Policy, you or an Insured must notify us in writing as soon as practicable.

3. You and an Insured must:
   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;
   b. Authorize us to obtain records and other information;
   c. Cooperate with us in the investigation, settlement or defense of the claim or suit; and
   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of loss or damage to which this insurance may also apply.

4. No Insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## I. Other Insurance

If other insurance applies to "Ultimate Net Loss" that is also covered by this Policy, this Policy will apply excess of, and will not contribute to, the other insurance. Nothing herein will be construed to make this Policy subject to the terms, conditions and limitations of such other insurance. However, other insurance does not include:

1. "Underlying Insurance";

2. Insurance that is specifically written as excess over this Policy; or

3. Insurance held by a person(s) or organization(s) qualifying as an additional insured in "Underlying Insurance", but only when the written contract or agreement between you and the additional insured requires a specific limit of insurance that is in excess of the Underlying Limits of Insurance. However, the Limits of Insurance afforded the additional insured in this paragraph shall be the lesser of the following:

   a. The minimum limits of insurance required in the contract or agreement between you and the additional insured; or

   b. The Limits of Insurance shown in the Declarations of this Policy.

Other insurance includes any type of self-insurance or other mechanism by which an Insured arranges for the funding of legal liabilities.

7

\*       \*       \*

## M. When "Ultimate Net Loss" Is Payable

Coverage under this Policy will not apply unless and until the Insured or the Insured's "Underlying Insurance" has paid or is obligated to pay the full amount of the limits of the "Underlying Insurance" scheduled in ITEM 5. of the Declarations. If other insurance applies, coverage under this Policy will not apply until the other insurance has paid or is obligated to pay the full amount of its limit of insurance.

When the "Ultimate Net Loss" is determined, we will pay on behalf of the Insured the amount of "Ultimate Net Loss" to which this insurance applies.

### The 2019 Zurich GL Policy

The 2019 Zurich GL Policy has limits of insurance of $1 million per occurrence, $2 million in the aggregate, and $2 million in the Products-Completed Operations aggregate. With the exception of its own terms and provisions, the 2019 Starr Policy follows form to the 2019 Zurich GL Policy.

Starr understands that the 2019 Zurich GL Policy's Insuring Agreement applies to "bodily injury" or "property damage" that occurs during the policy period caused by an "occurrence", provided an insured or authorized employee did not have knowledge that such "bodily injury" or "property damage" occurred in whole or in part prior to the policy period. The Insuring Agreement is modified by **Resulting Damage to Your Work** U-GL-1344-C CW (07/19), which provides as follows:

The following is added to Paragraph 1. Insuring Agreement of Section I — Coverage A — Bodily Injury And Property Damage Liability:

Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" or caused by "your work" and shall be deemed to be caused by an "occurrence" regardless of whether the "property damage" arises from breach of contract.

All other terms and conditions of this policy remain unchanged.

The 2019 Zurich GL Policy's Insuring Agreement further provides that knowledge by an insured or authorized employee of "property damage" that first occurred prior to the policy period, and continued, changed or resumed during or after the policy period, will be deemed to have been known prior to the policy period.

The 2019 Zurich GL Policy's Exclusion **b. Contractual Liability** applies to "bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. Liability assumed in an "insured contract" is an exception to this exclusion.

The 2019 Zurich GL Policy's Exclusion **j (5)** precludes coverage for "property damage" to that part of real property on which the Named Insured or any contractors or subcontractors working directly or indirectly on the Named Insured's behalf are performing operations, if the "property damage" arises out of those operations. Exclusion **j (5)** makes coverage unavailable for any property damage that may have occurred while the Named Insured was performing operations.

The 2019 Zurich GL Policy's Exclusion **j (6)** applies to "property damage" to that particular part of property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. This exclusion does not apply to the "products-completed operation hazard". Exclusion **j (6)** may apply to preclude coverage for costs associated with the correction of the Named Insured's incorrectly performed work.

The 2019 Zurich GL Policy's Exclusion **l. Damage to Your Work** applies to "property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard", unless the damaged work or the work out of which the damage arises was performed by a subcontractor.

The 2019 Zurich GL Policy's Exclusion **m. Damage to Impaired Property or Property Not Physically Injury** applies "property damage" to "Impaired Property" or property that has not been physically injured arising out of: 1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or 2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms. There is an exception to this exclusion for "loss of use of other property arising out of the sudden and accidental physical injury to "your product" or "your work".

The 2019 Zurich GL Policy contains the following relevant defined terms:

"Property damage" means physical injury to tangible property, including all resulting loss of use of that property. It also includes loss of use of tangible property that has not been physically injured.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Your product" means any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by the Named Insured, and includes warranties and representations made at any time with respect to the fitness, quality, durability, performance or use of "your product" and the providing or failure to provide warnings or instructions.

9

"Your work" means work or operations performed by you or on your behalf, including materials, parts or equipment furnished in connection with such work or operations. It also includes warranties and representations made at any time with respect to the fitness, quality, durability, performance or use of "your product" and the providing or failure to provide warnings or instructions.

"Impaired Property" means tangible property, other than "your work" or "your product", that cannot be used or is less useful because:
    a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
    b.  You have failed to fulfill the terms of a contract or agreement.

If such property can be restored to use by repair, replacement, adjustment or removal of "your product" or "your work" or by your fulfilling the terms of the contract or agreement.

*     *     *

The 2019 Zurich GL Policy contains the Exclusion – Contractors – Professional Liability endorsement (CG 22 79 04 13) and the Contractors Liability Supplemental Coverage and Conditions endorsement (U-CL-1060-E CW 04/13). This exclusion provides that the insurance does not apply to "property damage" arising out of the rendering of or failure to render any professional services by you or on your behalf, specifically with respect to "providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor," and "providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform."

The Zurich GL Policy contains the following pertinent Supplementary Payments provision of the CGL Coverage Form, which applies in addition to the limits of insurance:

    e.  All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys expenses taxed against the insured.

## COVERAGE POSITION AND RESERVATION OF RIGHTS

As you are aware, despite the Lawsuit being filed in 2022 and Mascaro's counterclaim against Tomko being filed on May 8, 2023, Starr was first notified of this claim in February 2024. Since that time, Starr has evaluated the information and documents that you have provided to it in connection with the Lawsuit and the claims asserted against Tomko. However, Tomko has not provided any analysis or evaluation by its defense counsel regarding any of the issues in the Lawsuit, including but not limited to Tomko's liability, the liability of other parties, and the damages at issue. Starr reiterates its request that you immediately provide all information,

documents, filings, pleadings, discovery, expert reports, damages assessments, liability assessments, defense counsel reports, and other material relevant to the claims in the Lawsuit.

Of the information and documents that have been provided, it has not been demonstrated that the Lawsuit involves covered damages for which Tomko is liable in an amount that exceeds the applicable underlying insurance, let alone the full limits of the 2019 Starr Policy as was demanded in your April 26, 2024 letter. Unless and until such time as it is demonstrated that covered damages for which the 2019 Starr Policy affords coverage exceeds at least $1,000,000 (one "per occurrence" limit of the Zurich 2019 Policy), Starr has no obligation to indemnify Tomko in connection with the Lawsuit.

Furthermore, Starr takes this opportunity to advise Tomko of certain potential coverage issues about which Tomko should be aware, and to reserve all of its rights, remedies, and defenses in connection with the allegations made in the Lawsuit. This includes but is not limited to a full and complete reservation of Starr's rights, remedies, and defenses under the 2019 Starr Policy, the 2019 Zurich GL Policy to which the Starr Policy follows form, all other potentially applicable insurance policies, and the applicable law, including but not limited to the right to assert the below referenced coverage defenses.

The 2019 Starr Policy provides that it will pay on behalf of the insured the "Ultimate Net Loss" in excess of the "Underlying Insurance," that the Insured becomes legally obligated to pay for loss or damage to which this insurance applies. It further provides that "[e]xcept for the terms, definitions, conditions and exclusions of this Policy, the coverage provided by this Policy shall follow the terms, definitions, conditions and exclusions of the applicable First Underlying Insurance Policy", which here is the 2019 Zurich GL Policy. Therefore, Starr reserves the right to rely on and enforce any and all terms, conditions, exclusions, endorsements, limitations or other provisions of the 2019 Zurich GL Policy to limit or deny coverage under the Starr Policy.

The following discussion addresses Starr's reservations of rights under certain specific provisions in the 2019 Zurich GL Policy, to which the 2019 Starr Policy follows form.

The 2019 Zurich GL Policy provides the insurance applies to damages because of "property damage" caused by an "occurrence" when such "property damage" takes place during the policy period. To the extent that any damages at issue are not "property damage" that occurred during the Zurich GL Policy's and the Starr Policy's policy period of October 21, 2019 to October 21, 2020, Starr reserves the right to limit or deny coverage.

The 2019 Zurich GL Policy's Insuring Agreement provides that the insurance applies to sums obligated to pay as damages because of "property damage" that occurs during the policy period that is caused by an "occurrence." The Insuring Agreement is modified to provide that "damages because of 'property damage' include damages the insured becomes legally obligated to pay because of 'property damage' to 'your work' or caused by 'your work' and shall be deemed to be caused by an 'occurrence' regardless of whether the 'property damage' arises from breach of contract." Therefore, to the extent that the allegations in the Lawsuit do not involve "property damage" caused by an "occurrence,"

11

Starr reserves the right to limit or deny coverage because the Insuring Agreement has not been satisfied.

The 2019 Zurich GL Policy's Contractual Liability exclusion applies to liability assumed by the Named Insured that is not an "insured contract". An "insured contract" is an agreement wherein the Named Insured assumes the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. To the extent Tomko has agreed to assume liability that is not an "insured contract", the Contractual Liability exclusion may apply. Therefore, Starr reserves the right to limit or deny coverage based on this exclusion.

The 2019 Zurich GL Policy's Exclusion j(5) precludes coverage for "property damage" to that part of real property on which the Named Insured or any contractors or subcontractors working directly or indirectly on the Named Insured's behalf are performing operations, if the "property damage" arises out of those operations. Exclusion j(6) applies to "property damage" to that particular part of property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. This exclusion does not apply to the "products-completed operations hazard". Exclusion j(6) may apply to preclude coverage for costs associated with the correction of the Named Insured's incorrectly performed or incomplete work. Therefore, Starr reserves the right to limit or deny coverage based on these exclusions.

The 2019 Zurich GL Policy's Exclusion l. Damage to Your Work, precludes any coverage for costs associated with repair or replacement of Tomko's completed work arising out of it or any part of it. This exclusion is subject to the "subcontractor" exception. The Lawsuit involves allegations of significant damages incurred in connection with repairing or replacing of Tomko's work. The pleadings contain no allegations that Tomko retained any subcontractors to complete Tomko's work under Tomko's contract with Mascaro. Therefore, Starr reserves the right to limit or deny coverage based on this exclusion.

The 2019 Zurich GL Policy's Exclusion m. Damage to Impaired Property or Property Not Physically Injured applies to "property damage" to "Impaired Property" or property that has not been physically injured. It excludes coverage for costs associated with restoring to use "Impaired Property" or with the loss of use of property that has not been physically injured due to a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work" or because of a delay or failure by you or anyone acting on your behalf to perform a contract or agreement. Starr reserves the right to limit or deny coverage based on this exclusion.

The 2019 Zurich GL Policy's Exclusion — Contractors-Professional Liability (CG 22 79 04 13) bars coverage for liability incurred that is premised on the rendering of or failure to render any professional architectural, engineering or surveying services. The claims in the Lawsuit potentially include allegations of such liability. Starr reserves the right to limit or deny coverage based on this exclusion.

The 2019 Zurich GL Policy's Supplementary Payments provision, which applies in addition to the limit of insurance, does not apply to any sums awarded to a claimant for attorneys' fees or attorneys' expenses. Starr reserves the right to limit or deny coverage based on this provision.

In addition, Starr brings to your attention a discussion of the following provisions in the 2019 Starr Policy.

The 2019 Starr Policy's Other Insurance Provision provides that if other insurance applies to "Ultimate Net Loss" also covered by the 2019 Starr Policy, then the 2019 Starr Policy will apply excess of, and will not contribute to, the other insurance. To the extent that Tomko has Other Insurance that applies to the claims in the Lawsuit, Starr reserves the right to limit or deny coverage based on the Other Insurance Provision.

The 2019 Starr Policy's Notice Provision provides that the insured must "see to it that we are notified as soon as practicable of an accident, occurrence or wrongful act which is reasonably likely to result in a claim or suit to which this insurance may apply." It further provides that "[i]f a claim is made or a suit is brought against an Insured that is reasonably likely to involve this Policy, you or an Insured must notify us in writing as soon as possible." Although this Lawsuit was filed in 2022 and Mascaro's counterclaim against Tomko was filed May 8, 2023, notice was not provided to Starr of the Lawsuit until February 2024. Starr reserves the right to limit or deny coverage based on the Notice Provision.

Please note that under the 2019 Starr Policy, Starr does not have a duty to defend. However, Starr has "the right and opportunity to participate or associate in the investigation, settlement or defense of any claim, suit or proceeding against you or an Insured for loss or damage to which this insurance may apply. If we exercise such right, which is at our sole discretion, we will do so at our own expense." Starr reserves the right to participate or associate in the investigation, settlement, or defense of the claim.

*      *      *

Of the information and documents that have been provided, there is no evidence that the Lawsuit involves covered damages for which Tomko is liable in an amount in excess of $1,000,000, let alone the 2019 Starr Policy's full $10 million limits that you demanded in your April 26, 2024 letter. It appears that most, if not all, of the damages sought relate to the repair of Tomko's work, which is precluded from coverage. As is discussed above, unless and until such time as it is demonstrated that covered damages exceed at least $1,000,000, Starr has no obligation under the 2019 Starr Policy to indemnify Tomko in connection with the Lawsuit. Starr will continue to comply with all Court orders and will appear at the Conciliation Conference scheduled for May 2, 2024, under a full reservation of rights. Neither this letter, Starr's participation in the upcoming Conciliation Conference, any of Starr's prior letters or Starr's participation in prior conferences, nor any other action by Starr shall be interpreted as an admission of coverage or a waiver of any of Starr's rights.

Please be advised that Starr's position is based upon the facts and information available to us at this time and is subject to the availability and review of additional information. Starr reserves the right to amend, revise, or supplement our position and raise any other coverage issues or coverage defenses without prejudice, waiver, or estoppel. Furthermore, neither this letter, nor any other action by Starr, constitutes a waiver of any policy provisions or defenses available under the 2019 Starr Policy, the 2019 Zurich GL Policy, or any other potentially applicable policy, or under applicable law. All rights are expressly reserved.

If any of the information relied upon by us in this letter is materially incorrect, or if you possess any additional information that you believe would have an impact on the coverage position taken herein, please immediately contact the undersigned at (213) 905-8593.

Sincerely,

*Sheryl Stepanenko*

Sheryl Stepanenko
Claims Manager
Starr Adjustment Services

14